***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. GAB Robins was the carrier on the risk at all times relevant herein.
4. Plaintiff sustained a compensable injury by accident to his back arising out of his employment with defendant-employer on 23 July 1999.
5. The parties stipulate that the average weekly wage of plaintiff is sufficient to yield the maximum compensation rate for the year 1999, $560.00.
6. The parties stipulated to plaintiff's medical records from Carolinas Medical Center, Miller Orthopaedic Clinic, Rowan Regional Medical Center, Dr. Ranjan Roy, Dr. H. Boyd Watts, Dr. William T. Mason and Dr. Rosa Adamzyck.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old and worked for defendant-employer renting and scheduling cranes.
2. From 1995 through 1996, plaintiff had previously worked for defendant-employer as a crane operator.
3. Prior to working for defendant-employer, plaintiff had had previous back surgeries. On 26 June 1992, plaintiff underwent a percutaneous laser disc decompression at L4-5. On 5 January 1993, plaintiff underwent a left L3-4 hemilaminotomy and excision of a foraminal and far lateral HNP. On 10 January 1995, plaintiff underwent bilateral decompressions, partial diskectomies and an L3-4 instrumental fusion.
4. After these surgeries, plaintiff had continuing back pain. However, plaintiff continued to work as a crane operator for defendant-employer during 1995 and 1996. Additionally, plaintiff lived in Georgia during the Olympics and worked as a traffic control coordinator.
5. Upon his return to North Carolina in 1999, plaintiff resumed working for defendant-employer in their Charlotte offices and although plaintiff had back pain from his prior surgeries, he continued to work on a daily basis until 23 July 1999.
6. On 22 April 1999, plaintiff presented to Dr. Mark Hartman, orthopaedist. Dr. Hartman diagnosed plaintiff with "discogenic back pain" with no radiation really into plaintiff's arms or legs.
7. On 23 July 1999, plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer when he slipped on a freshly mopped floor and fell, landing on his buttocks. Plaintiff immediately lost feeling in both legs and remained on the floor until paramedics arrived. He began regaining the feeling in his legs during the ambulance ride to the hospital.
8. Plaintiff testified that after his fall on 23 July 1999, his back pain substantially intensified and he began to experience pain radiating down into his left leg, the intensity of which he had not experienced prior to 23 July 1999. Plaintiff's testimony is accepted as credible. Defendants began paying plaintiff indemnity compensation pursuant to a Form 63 Payment of Compensation Without Prejudice which was filed on 25 August 1999.
9. Plaintiff presented to Dr. H. Boyd Watts on 28 July 1999. Dr. Watts' note from that date indicates that plaintiff fell at work and "flared up his central spine and his lumbar spine." After a CT myelogram and an epidural block, on 9 September 1999, Dr. Watts released plaintiff to work three to four hours per day.
10. On 13 September 1999, plaintiff reported to Dr. Watts that he was having too much pain driving 50 minutes each way to get to and from work. Based on plaintiff's pain and his inability to make the drive to Charlotte, North Carolina, Dr. Watts wrote plaintiff out of work for one week on 13 September 1999.
11. Plaintiff informed his supervisor of the difficulty he was having working restricted hours due to the length of his drive to and from work. Plaintiff testified that when he missed work, he called in to his supervisor and that he did not miss work without notice to his supervisor. However, on 14 September 1999, plaintiff was terminated from his job for allegedly not notifying defendant-employer when he would be out of work. At the time of plaintiff's termination Dr. Watts had excused plaintiff from work.
12. Due to continued complaints of pain, plaintiff's rehabilitation nurse scheduled a second opinion with Dr. William T. Mason on 31 January 2000. Dr. Mason noted that plaintiff was "still having significant problems with his back," and diagnosed plaintiff with post-operative pain and lumbar strain and a "possible break loose of the left side of the fusion at L4-5." Dr. Mason opined that plaintiff's current condition was related to his 23 July 1999 fall or certainly aggravated by it. Dr. Mason further opined that plaintiff was not able to return to gainful employment at that time and he suggested a referral to a neurosurgeon.
13. Defendant-employer failed to authorize a visit with a neurosurgeon. Nevertheless, plaintiff was able to arrange a visit with a neurosurgeon through North Carolina Vocational Rehabilitation.
14. On 7 January 2000, plaintiff saw Dr. Ranjan Roy, a neurosurgeon. Dr. Roy ordered an MRI. After reviewing the MRI, Dr. Roy felt surgery gave plaintiff little chance of success and recommended the comprehensive pain management program at North Carolina Baptist Hospital. Dr. Roy opined that plaintiff's July 1999 fall caused an aggravation of his back symptoms. Dr. Roy further opined that the major purpose of a comprehensive pain clinic was to give relief to plaintiff's pain. Dr. Roy further opined that without surgery, plaintiff is at maximum medical improvement.
15. During parts of five separate weeks between 6 April 2000 and 5 May 2000, plaintiff worked for Bobby Safrit performing lawn maintenance. Plaintiff worked a total of two to three hours per day on five occasions. He earned $10.00 per hour for a total of $150.00. Plaintiff's activities were captured on videotape by a private investigator hired by defendant-employer.
16. Plaintiff testified that on each occasion he worked, he had to take pain medications to tolerate two to three hours of activity and could not work the entire day due to his pain. Plaintiff's testimony concerning these activities and the difficulties plaintiff experienced performing these activities were corroborated by Bobby Safrit at the hearing.
17. The wages earned by plaintiff while working for Bobby Safrit sporadically two to three hours per day on five different occasions over a period of five weeks are not indicative of plaintiff's ability to compete with others for wages in the competitive job market.
18. Having reviewed the testimony of both parties, the Full Commission gives greater weight to the testimony of plaintiff.
19. The competent evidence in the record establishes that from 13 September 1999 and continuing, plaintiff has been unable to earn wages he was receiving at the time of his compensable injury at the same or in any other employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on 23 July 1999. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury, plaintiff has been incapable of earning wages which he was receiving at the time of his compensable injury at the same or in any other employment from 13 September 1999 and continuing. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $560.00 beginning 13 September 1999 and continuing until plaintiff returns to work or until further Order of the Commission. Any sums previously paid for indemnity compensation by defendants related to this claim shall be subtracted from this award, and defendants are entitled to a deduction of $150.00 which plaintiff earned mowing lawns. N.C. Gen. Stat. § 97-29.
4. Although in the absence of surgery, plaintiff has reached maximum medical improvement, he remains disabled and unable to return to the work force. The Full Commission is unable to determine at this time whether plaintiff is permanently and totally disabled in that it appears plaintiff would benefit from participation in a program of vocational rehabilitation. N.C. Gen. Stat. §§ 97-29; 97-25.
5. Defendants' Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation is hereby DENIED.
6. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred in the future, for so long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability, including all treatment rendered by Dr. Roy and the comprehensive pain clinic at N.C. Baptist Hospital as prescribed by Dr. Roy. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, the defendants shall pay plaintiff temporary total disability compensation at the rate of $560.00 per week beginning 13 September 1999 and continuing until plaintiff returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subtracting from that amount $150.00 and any sums in indemnity compensation which defendants have already paid pursuant to this claim, and subject to the attorney's fees hereinafter provided.
2. Defendants shall pay all of plaintiff's medical expenses incurred or to be incurred, including all treatment rendered by Dr. Roy, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability. Defendants shall pay for the comprehensive pain clinic treatment at North Carolina Baptist Hospital as prescribed by Dr. Roy.
3. Defendants shall pay the costs, including an expert witness fee to Dr. Watts in the amount of $235.00.
This the ___ day of December, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER